ISRAEL POULSON and wife

*v.*

GEORGE S. JOHNSON and others.

1. A testator gave to his widow the use of a part of his homestead, for life.    He also gave legacies to his two sons, George and Gardner, in trust for his three daughters for life, with remainder to their respective children.    He then gave *all the rest of his property*, including the homestead farm, to George and Gardner, subject to certain payments thereinafter mentioned, which embraced an annuity to his widow and a legacy to another son, Elias.—*Held*, that the legacies to the daughters were charges on the lands, notwithstanding the fact that an interest in lands was given to the widow in the will before the term "rest" was used, and notwithstanding the express charge in the gift of the residue of a subsequent legacy thereon.

2. George had given two notes, one jointly with his sister, who is insolvent, and the other with his father as surety; his father paid the latter.    George and Gardner being the executors, the latter prayed allowance for both notes, the first, on the ground that the sister was insolvent and of his inability to sue George, his co-executor; the second, on the ground that it had been omitted from the inventory by the appraisers.—*Held*, that George must account for both notes, and, the proceeding being analagous to a suit for their recovery, in a representative capacity George was an incompetent witness, and could not prove that the statute of limitations had run against such notes.

---

Bill for relief.    On final hearing on pleadings and proofs.

Poulson v. Johnson.

*Mr. G. A. Allen* and *Mr. J. Wilson*, for complainants.

*Mr. A. G. Richey*, for Gardner B. Johnson.

*Mr. J. T. Bird*, and *Mr. Geo. Sergeant* of Philadelphia, for Geo. S. Johnson.

THE CHANCELLOR.

William Johnson, late of Hunterdon county, deceased, by his will dated March 6th, 1858, after directing that his debts and funeral expenses be paid, gave to his wife all his household furniture and certain other specified articles of personal property, together with the use of so much of the house in which he at the time of making his will resided, as she might desire, and certain privileges upon the homestead farm on which that house was. He then gave to his two sons, George and Gardner, and the survivor of them, their heirs, executors, administrators or assigns, the sum of $2,000 in trust, to invest it and keep it invested and pay the income to his daughter Urania, to her separate use; the principal to go, at her death, to her children. He then made like provision for his daughters Anna and Harriet (the latter is one of the complainants in this suit) and their children. He then gave to his two sons, George and Gardner, "all the rest and residue" of his property, including his homestead farm and all the farming implements, machinery, hay, grain, grass, &c., cut or to be cut, which should be on the farm at the time of his death, " subject, nevertheless, to certain payments to be made by them" thereinafter "mentioned." He then gave to them a wood-lot, and then gave to his son Elias the sum of $3,500, to be paid to him by them; and added that, if Elias should be indebted to him, at his death, on promissory notes or otherwise, for money lent by him to Elias, it was his will that such indebtedness be considered as so much paid on the legacy of $3,500, and that his sons George and Gardner should only be required to pay to Elias the balance. He then declared it to be his

will that George and Gardner should pay to his wife, if she should survive him, the yearly sum of $180 for her life. He then gave to his wife a wood-lot. He appointed George and Gardner his executors. The date of his death does not appear.

The will was proved in September, 1869, and letters testamentary thereon were then issued to both executors. They together filed an inventory of the personal property, but only one of them, Gardner, has accounted. His account was filed in the orphans court of Hunterdon county, and passed in March, 1872. It showed a balance in his hands of·$1,140.70. He prayed and obtained allowance for the amount of a note of $218.65, made by his sister Urania and his. brother George, his co-executor, which was inventoried, but which, he says, he was not able to collect because he was not authorized to sue his co-executor.

It appears that, among the testator's papers, there was found a note made by George for $150, dated May 1st, 1861, payable to Catharine Woolverton or order, with interest from date. Receipts are endorsed thereon and signed by the payee, acknowledging payment of the interest up to May 1st, 1866. The note appears to have been endorsed by the testator as surety for George, and it was paid by the former. It was given to secure the repayment of money borrowed by George from the payee, for his own use.

In 1871 the homestead farm was sold by the devisees to one, John Hoffman, with consent of the complainant Mrs. Poulson, and her sister Urania. They gave their consent in consideration of an agreement in writing, made between them and George and Gardner, the devisees, by which the rights of the daughters of the testator and their children, under the will, in the trust funds above mentioned, were secured, in case it should be determined by this court that the legacies to the daughters were a charge on the farm. It is and then was alleged that the balance of personal property is and was insufficient to pay those legacies. They were in all $6,000, while the balance shown by the account

of Gardner was only $1,140.71. George denied that the legacies were a charge on the farm.

The bill prays that the will may be established and the trusts executed under the direction of this court; that the rights of the complainant Mrs. Poulson may be declared and secured, that an account may be taken of what is due to her for interest, under the trust in her favor, and that George and Gardner may be decreed to pay the interest to her, &c.

George and Gardner have answered separately. The former denies his liability on the notes above mentioned, made by him. He alleges that he signed the note made by him and his sister Urania, at the request of his father, and on the distinct assurance of the latter that he should never be required to pay it, but that his father would look to his sister alone for payment thereof. He sets up the statute of limitations against it, also. He alleges that the amount of the note given to Catharine Woolverton, was included in the amount of a note for $250, given by him to the testator, on the 6th of February, 1869, which was paid by him, and he says that Gardner well knew the fact, and that, therefore, the Woolverton note was not put in the inventory and was not appraised. He insists that the legacies given by the will to his sisters, were not a charge on the homestead farm. Gardner, by his answer, admits that they were a charge upon it.

The only questions discussed or presented for consideration on the hearing, were the question whether the legacies were a charge on the farm, and the question as to the liability of George upon the notes above mentioned. .

By the will, the testator, after directing payment of his debts and funeral expenses, and making certain provision for his wife, gives to his sons George and Gardner, in trust for his daughters and their children, legacies to the amount of $6,000, and then gives, devises and bequeaths to George and Gardner, all the rest and residue of his property, including the farm and farming implements, &c., subject, neverthe-

less, to certain payments thereinafter mentioned to be made by them. Those payments were whatever might be due to his son Elias on the legacy of $3,500, and the annuity to the testator's wife. Where legacies are given generally, and the residue of the real and personal estate is given in a mass, the legacies are a charge on the residuary real estate as well as the personal estate. *Corwine* v. *Corwine,* 9 *C. E. Gr.* 579; and it is immaterial whether interests in land have already been given by the will or not. *Bench* v. *Biles,* 4 *Madd.* 187; *Hawkins on Wills* 295; *Theobald on Wills* 475. Nor will the fact that the residue is itself expressly charged with the payment of legacies subsequently given, prevent the application of the rule. Such express charge is merely an additional charge. The legacies to the daughters (the widow is dead) are chargeable upon the proceeds of the sale of the farm reserved by the mortgages to answer the charge, if established, to the extent necessary to make up, with the personal estate in the hands of the executors applicable to the purpose, the amount of the legacies to the daughters and their children, and the interest due thereon. The rights of the assignee of one of the mortgages are, of course, to be recognized and respected. The executors are liable for any deficiency which may exist after application of the mortgage and the personal estate to the payment of the legacies and interest.

George is liable to account in this court for the amount of the two notes above mentioned, with the interest thereon. He has never accounted for either of them. His co-executor and himself were not charged with the Woolverton note in the inventory, and for the amount of the other the former prayed allowance in his account in the orphans court, on the ground that his sister Urania, one of the makers of it, was without property, and he was unable to bring suit against the other maker because he was his co-executor.

George, in his answer, says, as before stated, that the amount of the Woolverton note was included in a note which was given by him to his father, for $250, and that the

latter note having been paid by him, and his co-executor being aware of the fact, the former note was not inventoried or appraised. He is not only not supported by the evidence of his co-executor, but is contradicted by him and Ely Kitchin, who was one of the appraisers.

Gardner swears that the note of $250 was given for the amount of a certain tax and costs, which were paid for George by his father, and that the Woolverton note was not mentioned at the time when the note for $250 was given; that the Woolverton note was never paid by George to his father, to his knowledge, in any way; that he produced the Woolverton note to the appraisers, and requested them to appraise it, and that they did not appraise it because Mr. Kitchin objected on the ground that it was the joint note of the testator and George. He adds that George did not then make any claim or say that he had paid the note.

Mr. Kitchin testifies that the reason why he did not appraise the note was, that it was a joint note, and he could not ascertain who had paid it, whether George or his father. He says the note was found among the testator's papers, and that he does not think that George said anything whatever about it. Again, the fact that the note was given for George's debt, was found among the papers of the testator, and was, as is admitted by George, paid by his father, under the circumstances, establishes the claim against him. He himself testifies that the testator paid off the note in 1867 or 1868. The other note appears to have been given by him and his sister Urania, on the 1st of May, 1862, and three years' interest on it was paid, according to the endorsement upon it, on the 18th of December, 1866. He cannot avail himself of the statute of limitations. His testimony in reference to it will be held to be incompetent. He and his co-executor were called to account for his non-payment of this note. Had the suit been brought against him by his co-executor, there could be no question as to his incompetency to testify in support of his defence to it. The complainants, constrained, by the inaction of his co-execu-

Poulson *v.* Johnson.

tor and the refusal of George to pay the note, to bring this suit to coerce George to pay it; are to be regarded as suing in a representative capacity. But, further, his testimony is in conflict with his answer. In the latter, he says that he, some time prior to the making of the note, had, at the earnest request of his father, accepted the conveyance of a house and lot in Pennsylvania, from the husband of his sister Urania and her, upon certain trusts expressed in the deed, which was dated, he says, the 25th of April, 1852; that he was unwilling to accept the conveyance, and only did so because of the urgent request of his father, who said that he was old, and desired to escape the labor and trouble incident to the trust, and that George would, therefore, do him a great favor by accepting it. He further says, that the note was given by Urania for money lent to her by her father, and that the latter requested him to sign it because he held the title to the house and lot as trustee, and he adds that the testator distinctly assured him that he should never be required to pay the note. In his testimony, he says that his father knew nothing about the conveyance of the lot to him when it was made; that it was made at Doylestown, in Pennsylvania; that his sister's husband was then "shut up" there, and put the property out of his hands for the benefit of his children. Again, he expressly says that his father did not know anything about the matter until after he had accepted the deed and had come home. This testimony is in flat contradiction of the statement in his answer (which is sworn to by him) on the subject. He will be required to account for and pay over the amount of both notes, with the interest thereon.

A trustee will be appointed to receive and hold, on the trusts declared in the will, for the testator's daughters and their children, the mortgages before referred to, (subject to the rights, if any, of the assignee of one of them in that mortgage), and the money to be paid by George for the two notes and interest thereon, and the balance of the personal estate in the hands of Gardner, towards making up the

amount of the legacies and the interest due thereon, and George and Gardner will be decreed to pay the balance which will remain, with costs of this suit. As between George and his sister Urania, he will be allowed the amount of the note given by him, as her surety, with her.